**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN H. DURHAM, JR.**,

                **Plaintiff,**                              5:06-cv-1522
                                                                        (GLS)

      v.

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                **Defendant.**
_____

**APPEARANCES:**                           **OF COUNSEL:**

**FOR THE PLAINTIFF:**
McMahon, Kublick Law Firm      JENNIFER GALE SMITH, ESQ.
500 South Salina Street
Suite 816
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN    KARLA J. GWINN
United States Attorney                 Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

BARBARA L. SPIVAK
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**District Court Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff John Durham challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) and seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (*See* Compl., Dkt. No. 1.)  Upon reviewing the administrative record and carefully considering the arguments, the court affirms the Commissioner's decision.

## II. Background

On January 31, 2005, Durham filed applications for DIB and SSI under the Social Security Act (the Act), alleging disability since August 20, 2001.  (Tr.[1] at 15.)  After his application was denied, Durham requested a hearing before an Administrative Law Judge (ALJ), which was held on June 7, 2006.  (*Id.*)  On September 13, 2006, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final decision upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 5-7, 31.)

Durham commenced the present action by filing a complaint on

---

[1] "(Tr. )" refers to the page of the Administrative Transcript in this case.

2

December 20, 2006, seeking review of the Commissioner's determination. (Dkt. No. 1.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 5, 6.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 7, 11.)

### III. Contentions

Durham contends that the Commissioner's decision is not supported by substantial evidence or the appropriate legal standards. Specifically, Durham claims that the ALJ: (1) improperly assessed his residual functional capacity (RFC); (2) erred in concluding that his impairment did not meet or medically equal a listed impairment; and (3) failed to consult a vocational expert. (*See generally* Pl. Br., Dkt. No. 7.) The Commissioner counters that substantial evidence supports the ALJ's decision.

### IV. Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations. (*See* Pl. Br. at 1-2, Dkt. No. 7; Def. Br. at 1, Dkt. No. 11.)

### V. Standards of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. 405(g), and the five-step process used by the Commissioner in

3

evaluating whether a claimant is disabled under the Act are both well established and will not be repeated here.  For a full discussion of both the standard of review and the Commissioner's five-step process, the court refers the parties to its previous opinion in *Christiana v. Comm'r Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Residual Functional Capacity

Durham first challenges the ALJ's RFC assessment, arguing that the ALJ failed to (1) properly apply the relevant legal standard in assessing the impact of Durham's alcohol abuse on his disability, and (2) afford the appropriate weight to the opinion of his treating psychiatrist.  (*See* Pl. Br. at 6-7, Dkt. No. 7.)

### 1. Impact of Alcohol Abuse

In assessing a claimaint's RFC in cases involving alcohol abuse, SSA regulations require an ALJ to determine whether a claimant is disabled under the guidelines' five-step approach *before* "segregating out any effects that might be due to substance use disorders."  *Day v. Astrue*, No. 07-cv-157, 2008 WL 63285, at *5 (E.D.N.Y. Jan. 3, 2008) (citation and

4

quotation marks omitted). If the ALJ finds that the claimant is disabled under the five-step approach, as he did here, (*see* Tr. at 28), the ALJ must then analyze whether the claimant's alcohol abuse and dependency "is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a); *see also* 42 U.S.C. § 423(d)(2)(C); *Orr v. Barnhart*, 375 F. Supp.2d 193, 201 (W.D.N.Y. 2005) ("[T]he ALJ must ... only after finding that plaintiff is disabled, determine which impairments would remain if plaintiff stopped using alcohol."). Alcohol abuse and dependency constitutes "a contributing factor material to the determination of disability" if, in its absence, the claimant would not still be disabled. *See* 20 C.F.R. § 404.1535(b)(2). Contrary to Durham's assertions, the ALJ properly applied this standard. He first made a finding of disability, *then* evaluated the effects of Durham's alcohol abuse and dependency, and finally concluded that the abuse and dependency was a "contributing factor material to the determination of disability" under the regulations.[2] (*See* Tr. at 23-30.) In attacking this analysis, Durham claims that the ALJ failed to properly

---

[2]Specifically, the ALJ found that "when consideration is given to the effect of [Durham's] drug and alcohol abuse, his past record of employment and his own admissions show that it interfered with his ability to perform work on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule because it affected his ability to go to work on a timely basis if at all and/or work in a non-hangover condition." (Tr. at 25.)

5

address the psychological impairments that existed independent of his alcohol abuse.  (*See* Pl. Br. at 7, Dkt. No. 7.)  The court disagrees.

In *Frederick v. Barnhart*, 317 F. Supp.2d 286 (W.D.N.Y. 2004), the case underpinning Durham's argument, the district court held that the ALJ erred as a matter of law by failing "to identify plaintiff's remaining limitations so that [the ALJ] could complete the materiality analysis by determining whether these impairments (absent alcohol abuse) were themselves disabling within the meaning of the Act." 317 F. Supp.2d at 293.  Unlike in *Frederick*, however, the ALJ in this case did specifically consider the impairments that would remain absent alcohol abuse, recognized that those impairments would persist despite Durham's abstinence, but concluded that Durham retained the RFC to perform medium work.  (*See* Tr. at 29.)  Because this is precisely the type of analysis contemplated by *Frederick* and the applicable regulations, the court finds no error.  *See Frederick*, 317 F.Supp.2d at 294.

**2. Treating Psychiatrist**

Under the "treating physician rule," the opinion of a treating physician is generally given controlling weight in assessing a claimant's limitations. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Schaal v. Apfel*,

6

134 F.3d 496, 503 (2d Cir. 1998). However, the "ultimate finding of whether a claimant is disabled and cannot work [is] reserved to the Commissioner." *Snell*, 177 F.3d at 133 (internal quotation marks and citation omitted); *see also* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). In other words, "the Social Security Administration considers the data that physicians provide but draws its own conclusions ...." *Snell*, 177 F.3d at 133. Thus, a treating physician's disability assessment is not determinative. *See id.* Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Here, Durham argues that the ALJ failed to afford the appropriate weight to the opinion of his treating psychiatrist, Dr. Paula Zembrowski, in assessing the effect of his alcohol abuse. Specifically, Durham contends that the ALJ "ignored" Dr. Zembrowski's opinion that Durham "suffers from mental health disorders that affect him independently of his alcohol abuse." (*See* Pl. Br. at 8-10, Dkt. No. 7.) This claim fails for at least two reasons.

First, as noted above, the ALJ did not find Durham's alcohol abuse to

7

be the *sole* cause of his impairments, but instead found that the remaining impairments did not render him disabled. (*See* Tr. at 29.) Thus, the ALJ's assessment is not, as Durham contends, wholly inconsistent with Dr. Zembrowski's opinion that Durham suffers from independent mental impairments. And second, to the extent that the ALJ's assessment is inconsistent with Dr. Zembrowski's opinion, it is nonetheless supported by substantial record evidence, all of which the ALJ considered in concluding that Durham would not be disabled absent his substance abuse problem.[3] (*See* Tr. at 25-29.) Therefore, because the ALJ's determination as to the effect of Durham's alcohol abuse finds support in other substantial evidence, his decision not to afford controlling weight to the contrary opinion of Dr. Zembrowski was not improper. *See Snell*, 177 F.3d at 133.

    Accordingly, because the ALJ's RFC assessment was conducted pursuant to the appropriate legal standards and is supported by substantial evidence, it is affirmed.

---

[3] The record demonstrates that Durham admitted to having a very serious drug and alcohol addiction; that Durham's substance abuse had prevented him in the past from sustaining full-time employment; and that Durham was even unable to sustain full-time employment when merely engaged in the treatment for his substance abuse problem, regardless of whether he was actually abusing drugs or alcohol at the time. (*See* Tr. 25-29.) As the ALJ pointed out with regard to this last finding, the "rigid schedule" required by Durham's treatment program and supervised living situation "would prevent him from working full time [and] from sustaining work-related physical and mental activities in a work setting on a regular and continuing basis." (*Id.* at 29.)

8

**B.     Listed Impairment**

Durham next challenges the ALJ's step-three finding that his psychological impairments did not meet or medically equal any listed impairment. (*See* Pl. Br. at 13, Dkt. No. 7.) This argument is also without merit.

In assessing the degree of a plaintiff's functional limitation resulting from mental impairments, an ALJ must rate the impact of those impairments in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *See* 20 C.F.R. § 404.1520a(b)(1) & (c)(3). These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). A finding of marked limitations in two or more of the areas will generally establish that the claimant is disabled. *Paratore v. Comm'r of Soc. Sec. Admin.*, No. 6:05-CV-1356, 2008 WL 541156, at *5 (N.D.N.Y. Feb. 25, 2008). In making this assessment, an ALJ must consider the opinions of non-treating State-agency medical sources, and may rely on them to the extent they are "supported by evidence in the case record," since these sources are regarded under the regulations as "experts in the Social Security disability

9

programs." *See* Social Security Ruling (SSR) 96-6p, 1996 WL 374180, at *1-3 (S.S.A. July 2, 1996); 20 C.F.R. §§ 404.1527(f), 416.927(f).

In making his step-three determination in this case, the ALJ relied on the opinions of State agency psychiatrist Herman Berliss and State agency psychologist C. Richard Nobel, both of whom concluded that none of Durham's mental impairments, either singly or in combination, met or medically equaled any of the listed impairments.  (*See* Tr. at 24.) Specifically, each doctor found that Durham suffered only "a mild limitation in daily living activities, a moderate limitation maintaining social functioning and a moderate limitation maintaining concentration, persistence or pace." (*Id.*)  In addition, neither doctor found that Durham had suffered any repeated episodes of decompensation of extended duration.  (*See id.*) Because these opinions are consistent with the other record evidence, the ALJ's finding that Durham's limitations did not meet or medically equal a listed impairment is sound and is therefore affirmed.

### C.    **Vocational Expert**

Finally, Durham argues that the ALJ erred at step five in not consulting a vocational expert to determine the extent to which Durham's

10

non-exertional limitations eroded his occupational base. As with Durham's other arguments, this argument is unavailing.

Initially, because the ALJ found that Durham was capable of returning to his past relevant work at step four, (*see* Tr. at 30), he was not required to proceed to step five to consider vocational factors such as age, education, and workplace. *See* 20 C.F.R. §§ 404.1560, 416.960; *see also Berry v. Schweiker*, 675 F.2d. 464, 469 (2d Cir. 1982). However, even assuming that a step-five analysis was necessary, the ALJ properly performed that analysis.

At step five, an ALJ is required to perform a two-part inquiry, first assessing the claimant's job qualifications by considering his physical ability, age, and work experience, and then determining whether jobs exist in the national economy that the claimant could perform. *See* 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1520(f); *Heckler v. Campbell*, 461 U.S. 458, 460 (1983). The second part of this two-part process is generally satisfied by referring to the applicable rule set forth in the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids"). *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). Thus, an ALJ may rely exclusively on the Grids for guidance in gauging the

11

range of work available to a claimant, even if that claimant suffers from non-exertional impairments. *Id.* at 605. Indeed, only where "a claimant's non-exertional impairments *significantly* limit the range of work permitted by his exertional limitations" is such exclusive reliance on the Grids inappropriate. *Id.* at 605-06 (emphasis added and internal quotation marks and citation omitted). "Significant" limitations exist if there is "an additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id.* at 606.

Here, the ALJ determined that although Durham's ability to perform work at all exertional levels was compromised by his non-exertional limitations, those limitations, absent Durham's alcohol abuse, "would have little or no effect on the occupational base of unskilled work at all exertional levels." (Tr. at 30.) Based on that determination, the ALJ relied on the relevant section of the Grids and found that Durham was not disabled. (*See id.*) Thus, because substantial evidence supports the conclusion that Durham's work capacity was not significantly limited, the court finds that the ALJ's subsequent reliance on the Grids was proper, and that additional vocational evidence was not necessary. Accordingly, the court affirms the

12

ALJ's step-five findings.

## D. Remaining Findings and Conclusions

After careful review of the record, the court finds that the remainder of the ALJ's decision is supported by substantial evidence and is therefore affirmed.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Durham's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March, 26, 2010
Albany, New York

_____
United States District Court Judge